## JOHN MARK STRONG, by WM. K. WOODBURN, His Guardian Ad Litem, Appellant, v. DIANA STRONG, Respondent.

No. 3771
February 24, 1954.                              267 P.2d 240.

*Woodburn, Forman and Woodburn,* and *Gordon R. Thompson,* of Reno, for Appellant.

*Pike & McLaughlin,* of Reno, and *Donn B. Downen, Jr.,* of Los Angeles, California, for Respondent.

## OPINION

By the Court, EATHER, C. J.:

The appellant, a minor child, not yet two years old, brought this action by his guardian ad litem against his mother to recover for the death of his father, alleged

to have resulted from her negligent driving of an automobile.

On May 4, 1953, a complaint was filed with the Second judicial district court by William K. Woodburn as guardian ad litem for John Mark Strong, plaintiff, against Diana Strong, defendant. The complaint contains two causes of action and alleges, in substance, that the death of John Strong was caused by the negligence, gross negligence and wilful misconduct of Diana Strong while driving a 1951 MG automobile on October 11, 1952, and that by reason of such death plaintiff John Mark Strong was deprived of the support, comfort, society and moral and intellectual training of his father to his damage in the sum of $50,000. The complaint further alleged that the plaintiff John Mark Strong and the defendant Diana Strong are the only surviving heirs of the decedent.

On May 26, 1953, the defendant moved to dismiss the action upon the grounds:

(a) That the complaint failed to state a claim upon which relief could be granted;

(b) That the complaint failed to join an indispensable party plaintiff.

The motion to dismiss was, by consent of the attorneys, treated as a motion for summary judgment and orally argued before the trial court on July 24, 1953. On July 28, 1953, the trial court entered its order granting defendant's motion for summary judgment.

On August 26, 1953, plaintiff filed a notice of appeal from said judgment.

We accept appellant's statement of the issue involved in this appeal. It is: Does sec. 8554, N.C.L., 1931-1941 Supp., give to an unemancipated minor the right to maintain an action for damages against his mother for the wrongful death of his father? The section in question reads as follows:

"Sec. 55. When the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of

his heirs, may maintain an action for damages against the person causing the death, or, if such person be employed by another person who is responsible for his conduct, then also against such other person. If such adult person have a guardian at the time of his death, only one action can be maintained for the injury to or death of such person, and such action may be brought by either the personal representatives of such adult person deceased for the benefit of his heirs, or by such guardian for the benefit of his heirs as provided in sec. 54. In every action under this and the preceding section such damages, pecuniary and exemplary, may be given as under all the circumstances of the case may be just."

The nature and effect of the foregoing wrongful death statute as existing in this case has heretofore had the attention of this court and the federal court for this district. In Wells, Inc. v. Shoemake, 64 Nev. 57, 66, 177 P.2d 451, 456, we said:

"The common law afforded no remedy in damages for a wrongful death. Whatever standing plaintiffs have in the present case must be found in the statutes of Nevada. The remedy, being wholly statutory, is exclusive. The statute provides the only measure of damages, and designates the only person who can maintain such an action. Salmon v. Rathjens, 152 Cal. 290, 92 P. 733."

And in Estes v. Riggins, 68 Nev. 336, 338, 232 P.2d 843, 844, we described the nature of the cause of action as follows:

"The recovery sought in this case is solely for the injury alleged to have been caused to plaintiffs by the death of the husband and father, who was their support; in other words, for the injury they sustained and not for the injury to Robert Estes. At common law, there would be no cause of action in them; it would be considered that they had not sustained any compensable loss. But many years ago the legislatures of the various states enacted laws giving rights of action under such

circumstances. Thereby new causes of action came into being which otherwise would not exist."

In Perry v. Tonopah Mining Company (District Court, Nevada) 13 Fed.2d 865, 870, the cause of action was thus characterized:

"The Nevada statute does not profess to continue or revive an action which the injured person might have maintained if death had not ensued. That right of action is extinguished by death. What the statute does give is a new and independent right of action to the kindred who are injured by the death. It is a right of action which has no existence until the death of the injured party, and results therefrom. It makes no account of wrong done to the deceased; it is only concerned with the loss to the relatives."

It is clear then that the common law has been modified in this state by legislative act giving a cause of action for wrongful death. It is maintained by appellant that the same statute likewise modified the common-law rule, which appellant frankly recognizes, negativing the right of a minor to sue a parent in tort. Appellant's contention is based upon the assertion that the right given to the heirs of the deceased person, or to the deceased's personal representatives for the benefit of his heirs, for the death of such deceased person when caused by the wrongful act or neglect of another, is without restriction or limitation. It is asserted that this absence of restriction or limitation draws into the meaning of the statute the right of the minor child to sue the mother for the wrongful death of the father. It is contended that the statute does not deal with particular deaths by wrongful act, nor with particular parties, but applies to all deaths by wrongful act, and permits suit by any individual if he be a member of the class specified in the statute, to-wit, an heir; that in like manner the statutory action against "the person causing the death" is not limited to cases where such person is not the mother or father of the heir suffering the loss. Under this theory appellant

disclaims any contention that the statute in question repeals the common-law immunity rule by implication (see Cunningham v. Washoe County, 66 Nev. 60, 203 P.2d 611), but urges that the statute is in itself a direct repeal. The learned district judge rejected this contention and we are in accord with such rejection. If we adopt appellant's theory of making no resort to any asserted repeal by implication (which we are justified in doing), we then search in vain to find in sec. 8554 any words effecting such express repeal. A cause of action for wrongful death is created by certain and unmistakable language. Such derogation of the common law is beyond reasonable dispute.[1] That the cause of action should be limited to his heirs or to his personal representatives for the benefit of his heirs is a limitation. The requirement that if the deceased had a guardian at the time of his death only one action might be brought (either by such guardian for the benefit of the heirs or by the personal representatives for the benefit of the heirs) is a further limitation. The last sentence of the section defines the damages that may be awarded—the addition of the words "pecuniary and exemplary" having been made by the legislature in 1939, Stats. 1939, 17. Nowhere is there a direct repeal of the common-law rule of immunity of the parent from suit by a minor child.

Appellant presents, as the only reported case directly in point, Minkin v. Minkin, 336 Pa. 49, 7 A.2d 461, 462, in which case the court upheld, under the Pennsylvania statute, the suit of an eight-year-old minor, through her

[1]A portion of appellant's brief considers the common-law rule and contends that its basis in the preservation of domestic tranquility, the avoidance of collusion and fraud and the maintenance of parental discipline, etc., is to ignore reality and present-day conditions and relations. In support of this, appellant quotes at length an analysis and criticism of the common-law immunity rule by Professor William E. McCurdy, 43 Harvard Law Review, 1059. A reading of Professor McCurdy's article, which purports to answer in detail the "seven reasons [which] have been advanced in support of the doctrine" of parental immunity from suit of an unemancipated minor child, only confirms the view that a public policy departing from the common-law rule must find its expression in an act of the legislature.

next friend, against the minor's mother to recover for the wrongful death of the minor's father. The Pennsylvania statute, while differing materially in many repects from the Nevada statute, did, in the language of the court, "provide for the recovery of compensation for loss for which the common law furnished no redress." The statute provided further, "* * * The widow of any such deceased, or if there be no widow, the personal representatives, may maintain an action for and recover damages for the death thus occasioned. * * * That the persons entitled to recover damages for any injuries causing death shall be the husband, widow, children or parents of the deceased, and no other relatives; and that such husband, widow, children or parents of the deceased shall be entitled to recover, whether he, she or they be citizens or residents of the Commonwealth of Pennsylvania, or citizens or residents of any other state or place * * * and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy * * *." 12 P.S., sec. 1601, 1602. The court held in rejecting the common-law immunity of a parent from a suit of a minor child: "The legislature made no exceptions * * *. The words of the conjectured exception are not found in the statute, and as it is complete without them, we are not authorized to add them."

Peculiarly enough, of the seven justices comprising the Supreme Court of Pennsylvania, not only did three of the justices dissent, upon the ground that the wrongful death statute did not repeal the common-law immunity rule, but a fourth justice, while concurring in the result (because he was of the opinion that it is not against public policy for a minor to sue his parent where the suit is to vindicate *property* rights and not to recover damages for acts of violence or negligence affecting the person), refused to subscribe to the view that the generality of the provisions of the wrongful death statute permitted the suit of a minor child against its parent in tort. Thus four members of the court definitely held

that the Pennsylvania wrongful death statute did not permit the action. The dissenting opinion called attention to the fact that the Pennsylvania court had previously held that "notwithstanding these statutes, public policy forbids the pursuit of death actions against certain classes of tort feasors, as in cases of public charities, schools, religious institutions and municipal corporations carrying on a governmental function, so that it is not for all torts resulting in death that actions can be maintained." Several cases are then cited. Appellant's interpretation of our wrongful death statute would not only repeal the rule of immunity of parents from tort actions of minor children but would likewise repeal the rule of immunity of public charities, schools, religious institutions and municipal corporations carrying on a governmental function. See Granite Oil Securities, Inc., v. Douglas County, 67 Nev. 388, 219 P.2d 191, 16 A.L.R.2d 1069, and cases therein cited.

It being conceded that none of the other cases cited by appellant are directly in point, we do not find it necessary to discuss them. Appellant concedes the common-law immunity rule and does not claim a repeal by implication. His position stands squarely upon the contention that the generality of the statute is a direct repeal of the common-law rule, but we find no language therein justifying this conclusion.

The judgment of the district court is affirmed with costs.

MERRILL and BADT, JJ., concur.

April 12, 1954.                              269 P.2d 265.

*Woodburn, Forman and Woodburn,* and *Gordon R. Thompson,* of Reno, for Appellant.

*Pike & McLaughlin,* of Reno, and *Donn B. Downen, Jr.,* of Los Angeles, for Respondent.

ON PETITION FOR REHEARING

*Per Curiam:*

Upon petition for rehearing, appellant points out that in resting our decision upon the common-law rule that an unemancipated minor child cannot sue his parent in tort for personal injuries, we have disregarded a recognized exception to the rule.

That exception has to do with cases of intentional or willful acts on the part of the parent.

Appellant contends that since the complaint in this action alleges willful misconduct on the part of respondent a genuine issue has been raised as to whether the exception applies; and summary judgment was, therefore, improper.

The authorities cited by appellant to establish the exception to the general rule have to do with cases where the misconduct was deliberate and malicious, in one instance a case where one parent was shot and killed by the other. In our view such exception should not be held to apply to facts such as are before us where the case is based, as appellant concedes, primarily upon negligence and not malicious wrongdoing.

Rehearing denied.